UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------X
FRANK ALLEN,

                Petitioner,                                  MEMORANDUM & ORDER
                                                                                05-CV-2699 (NGG)

      - against -

McGINNIS,
Southport Correctional Facility,

                Respondent.
----------------------------------------------X

GARAUFIS, United States District Judge.

      Pro se Petitioner Frank Allen ("Allen" or "Petitioner") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Allen challenges his conviction rendered in New York Supreme Court, Queens County, for Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law § 220.39(1)). For the reasons set forth below, Allen's Petition is DENIED.

## I. FACTUAL BACKGROUND

      This Petition arises from a guilty plea entered by Petitioner on March 16, 2001, and a sentencing hearing on September 17, 2001 in which Petitioner, representing himself pro se, was adjudged a second violent offender and sentenced to four and one-half to nine years imprisonment. On February 20, 2000, an undercover police detective observed Petitioner participate in the sale of a controlled substance. (Dec'n Opp. Pet., Ex. E ("Pet. App. Br."), at 4.) Allen was stopped, arrested, and searched, which recovered two bags containing a white powder substance. (Id.)

1

In a hearing before the Honorable Roger Rosengarten on March 16, 2001, in which Petitioner was represented by Kevin O'Donnell, Esq., his second appointed attorney,[1] Petitioner signed a plea agreement and pleaded guilty to criminal sale of a controlled substance in the third degree. (Trial Transcript, dated March 16, 2001 ("March 16 Trial Tr."), at 3-9.) Mr. O'Donnell represented that Petitioner wished to plead guilty without waiving the right to appeal. (Id. at 2.) Judge Rosengarten refused to accept a guilty plea without an appeal waiver, and asked if Petitioner still wanted to plead guilty. Petitioner responded "All right. Go ahead." (Id. at 3.) The trial judge then had the following exchange with Petitioner:

> The Court: [Defense counsel] Mr. O'Donnell tells me that you have decided and you want to plead guilty to the first count of this indictment that charges you with Criminal Sale of a Controlled Substance in the 3rd Degree which is a Class B Felony, with the knowledge that I will sentence you to the minimum term allowable under that plea which is four and a half to nine years. And I will state no objection to your being released on your first possible release date. Is that what you want to do sir?
>
> Defendant: Yes, I do.
>
> The Court: All right. Do you understand, sir, that by pleading guilty you are giving up your right to have a trial by jury. In fact, we are in the middle of jury selection. And you understand you are giving up that right to continue with this jury trial?
>
> Defendant: Yes, I do.
>
> The Court: All right. I want you to know that if we went through the trial here, that at the close of jury selection the People would have the burden of proving that you are guilty beyond a reasonable doubt. And you are not required to prove anything. You are not required to do anything. You could just sit there and do absolutely nothing and see if the People prove their case or not. And while you have the

---

[1] Petitioner's first appointed attorney was Donna Hase, who represented Petitioner in a Dunaway/Mapp hearing on September 5, 2000. (Gov't Mem. Opp., at 6 n.1.)

right to assist your lawyer in cross examining the People's witnesses, you are under no obligation to present any case because the burden of proof is on the People. Do you understand this?

Defendant: Yes.

The Court: Is anybody forcing you to plead guilty?

Defendant: No.

The Court: Are you pleading guilty of your own free will?

Defendant: Yes.

The Court: Other than the promise that I made you in regard to sentence, did anybody promise you anything else to get you to plead guilty?

Defendant: No.

The Court: I show you this document [waiver of right to appeal] here. Is this the document you just signed?

Defendant: Yes, I did.

The Court: You understand that by signing this document you are giving up your right to take an appeal on this case?

Defendant: Yes.

The Court: That means this case ends now.

Defendant: Yes.

The Court: There is no going to a higher court, no appeal, no nothing. So you understand that?

Defendant: Yes.

The Court: Is that what you want to do, sir?

Defendant: Yes.

The Court: The Court finds the defendant's waiver to be knowingly,

voluntarily and intelligently made after consultation with Counsel.

(Id. at 6-8.) The judge then noted that he had assigned Mr. O'Donnell to Petitioner after Petitioner expressed dissatisfaction with his first assigned counsel. The judge asked Petitioner if he was satisfied with current counsel, and Petitioner, after correcting himself, testified "Yes, I am." (Id. at 8.) Petitioner then allocuted to having sold cocaine in Queens County on February 20, 2000, and the judge adjourned for sentencing. (Id. at 9.)

Before the sentencing hearing on May 16, 2001, Petitioner moved to withdraw the plea pro se on the ground that Mr. O'Donnell coerced him into accepting the plea agreement. (Trial Transcript, dated May 16, 2001 ("May 16 Trial Tr."), at 2.) At the May 16 hearing, the judge relieved Mr. O'Donnell, and adjourned to appoint new counsel. (Id. at 2-3.) On June 7, 2001, at a pre-sentencing hearing, the judge denied Petitioner's motion to withdraw his plea of guilty. Petitioner's third appointed counsel, Francis Ruddy, Esq., appeared on Petitioner's behalf at this hearing. (Trial Transcript, dated June 7, 2001 ("June 7 Trial Tr."), at 2.) Petitioner initially refused to appear, but then did appear to state that he did not want Mr. Ruddy to represent him. (Id. at 4.) The judge responded, "All right, Mr. Ruddy, you are relieved. You're [Petitioner] on your own. You represent yourself. You are pro se. Mr. Ruddy is relieved. Continue to arraign him." (Id. at 4.) The judge continued with the hearing, directing Petitioner to admit or deny that he was convicted of a prior felony. (Id. at 4-8.) The judge deemed Petitioner to have denied having a prior felony conviction, and adjourned for a hearing on the issue. (Id. at 9-10.)

Before the end of the hearing, the prosecution interjected, expressing "concern[] about the defendant not having an attorney, without a waiver or adequate warnings as to whether his counsel was ineffective or not." (Id. at 8.) The judge and Petitioner had the following colloquy:

4

>   The Court:     Mr. Allen, I want you to know since you asked the court to relieve
>                  Mr. Ruddy, who is I believe your third attorney in this case, I am
>                  not going to assign you another attorney . . . .
>
>   Defendant:     Yeah, but what he said over there, he told me I was coming over
>                  here to cop out, that's what he said.
>
>   The Court:     I want you to understand, sir, unless you stay with Mr. Ruddy, you
>                  are not going to get another lawyer. You've exhausted your supply
>                  of lawyers. So it's going to be up to you. I am going to give you a
>                  half hour and you are going to come back at 12:30 and you can
>                  decide if you want to keep him on this or not.

(Id. at 10-11.) The judge later offered to assign Mr. Ruddy as an "adviser" to Mr. Allen's case.

(Id. at 11.) Allen stated "I want him to be the lawyer." The judge then stated "You do? Okay.

Then he will continue to represent you on the hearing on the predicate felony." (Id. at 12.)

At the sentencing hearing on September 17, 2001, Mr. Ruddy again appeared on behalf of Allen. The prosecution stated that it could not obtain minutes of the proceedings of the prior conviction, and produced a certificate of conviction as proof of the prior felony conviction. (Trial Transcript, dated September 17, 2001 ("September 17 Trial Tr."), at 2-3.) Mr. Ruddy opposed this application, and then added an application of his own:

> I also have another request. He [Petitioner] just told me in the back that he wishes
> to sue me. So, I'm going to make a motion - or he's going - he's going to sue my
> ass. that's his words. On that statement to me I'm making a motion . . . to
> withdraw as his attorney . . . . he's cursing me and threatening me with lawsuits.

(Id. at 3-4.) Petitioner accused Mr. Ruddy of having failed to provide him a copy of the decision denying his motion to withdraw his plea, and Mr. Ruddy responded that he handed Petitioner a copy of the denial at the June 7, 2001 hearing, and again by mail, which Petitioner did not dispute. (Id. at 4-5.) The judge relieved Mr. Ruddy, stating "I

5

find that this being his fourth attorney[2] that Mr. Allen has waived his right for further representation by appointed counsel," and proceeded with the sentencing. (Id. at 4-5.) The judge accepted the certificate of conviction of proof of a prior felony, and sentenced Petitioner to four-and-a-half to nine years imprisonment. (Id. at 6-8.)

Petitioner appealed the conviction, on the grounds that the court denied Petitioner's right to due process when it deemed him pro se without inquiring into his competency, that Petitioner was improperly adjudicated a predicate felon, and that Petitioner was denied due process by being coerced into waiving his right to appeal. (Pet's App. Br., at 8-14.) On January 21, 2004, the Appellate Division affirmed Petitioner's conviction, finding that the trial judge "properly granted the defendant's request at sentencing to relieve his third court-appointed attorney and determined that the [Petitioner] . . . would have to represent himself . . . . [because Petitioner] voluntarily waived his right to counsel when he refused, without good cause, to cooperate with able appointed counsel." People v. Allen, 4 A.D.3d 479, 479 (2d Dep't 2004). The Appellate Division also held that Petitioner was properly sentenced as a second felony offender because "[t]he People met their burden of proving beyond a reasonable doubt that the defendant was a second felony offender by producing a certificate of conviction, which identified the previously convicted individual by name and New York State Identification Number," id. at 479-80, and Petitioner's "conclusory allegations" were insufficient to show that the prior conviction was "unconstitutionally obtained . . . ." Id. at 480. On

---

[2] It appears that Petitioner had been appointed three, not four, attorneys: Donna Hase, Kevin O'Donnell, and Francis Ruddy. (Gov't Mem. Opp., at 6 n.1.)

May 10, 2004, the Court of Appeals denied leave to appeal. People v. Allen, 2 N.Y.3d 795 (N.Y. 2004).

Allen filed the instant Petition pro se on May 23, 2005, reasserting the same grounds as those presented to the Appellate Division. (Petition, at 5-6.)

## II. DISCUSSION

**A.    Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court can entertain an application for a writ of habeas corpus by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA reconfigured the standard of review in habeas cases where claims were "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), by requiring "more deferential review." Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006) (internal quotation omitted). As the Appellate Division ruled that Petitioner's claims lacked merit, see People v. Allen, 4 A.D.3d 479, 479-80 (2d Dep't 2004), I review Petitioner's claims under the deferential standard articulated in AEDPA.[3]

---

[3] On June 7, 2005, Petitioner sought an abeyance of this proceeding to file an additional state appellate application. (Pet's Ltr. Ct., dated June 7, 2005.) As Petitioner failed to inform the court of which claims he sought to exhaust in state court, or if he sought to raise new claims, I stayed the proceedings temporarily for Petitioner to inform this court which claims he sought to exhaust. (Memorandum and Order, dated June 24, 2005, at 1-2.) Petitioner wrote again to the court on October 4, 2005, alleging that the correctional facility deliberately failed to file his state motion until after the applicable deadline. (Pet's Ltr. Ct., dated Oct. 4, 2005.) As all of Petitioner's claims presented in his Petition are exhausted, and Petitioner has stated that he is barred from bringing the state application he wished to bring, I shall proceed to consider Petitioner's claims.

7

As amended by AEDPA, 28 U.S.C. § 2254(d) reads in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's factual finding enjoys a 'presumption of correctness' that the petitioner must rebut by clear and convincing evidence." DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

A state court's decision is "contrary" to clearly established federal law as set forth by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of the law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Accordingly, this Court cannot grant the writ if it "concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness

8

beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc)).

A petitioner must "identify a clearly established Supreme Court precedent that bears on his claim," Loliscio v. Goord, 263 F.3d 178, 191 (2d Cir. 2001), and cannot succeed by showing that the state court misapplied a circuit court precedent. Delvalle v. Armstrong, 306 F.3d 1197, 1199-1200 (2d Cir. 2002). Moreover, the phrase "clearly established" in the AEDPA statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Williams, 529 U.S. at 412.

**B.  Guilty Plea**

In March 2001, Petitioner pleaded guilty and waived his right to appeal pursuant to a plea agreement, which he now contends was not made knowingly or voluntarily. In order to consider Petitioner's claim that the trial judge violated his constitutional rights in rejecting a guilty plea without an appeal waiver, I must first decide whether Petitioner's plea was entered knowingly, intelligently, and voluntarily. To ascertain whether a guilty plea is entered into without impermissible coercion, and "with sufficient awareness of the relevant circumstances and likely consequences," Brady v. United States, 397 U.S. 742, 748 (1970), the trial court before accepting a guilty plea must produce a record "affirmatively showing that it was intelligent and voluntary." Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of a guilty plea is

9

reviewed by examining the totality of the relevant circumstances." Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006).

The March 16, 2001 hearing transcript demonstrates that Petitioner's guilty plea, including his appeal waiver, was not the product of coercion or a misunderstanding on the part of Petitioner. Petitioner's guilty plea was made in open court, and Petitioner was represented by counsel when he entered his guilty plea and waived his appeal rights. See Willbright v. Smith, 745 F.2d 779, 781 (2d Cir. 1984) ("a significant factor in determining whether a plea is intelligently and voluntarily entered is whether it was based on the advice of competent counsel"). Petitioner, before he elected to plead guilty, was fully informed that his guilty plea must include a waiver of appeal, and Petitioner affirmatively waived his right to appeal. Significantly, the trial judge had a *subsequent* colloquy with the Petitioner in which he testified that he still wished to plead guilty, and that he understood that his plea waived his right to a trial and appeal. Upon review, the totality of the circumstances demonstrate that his guilty plea was made without coercion, and that he understood the implications of his guilty plea.

In light of his voluntary and intelligent guilty plea, Petitioner's contention that the trial judge violated his constitutional rights when he refused to accept his guilty plea without a waiver of appeal is without merit. There is no right to a guilty plea that suits the defendant's wishes. See Santobello v. New York, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of sound judicial discretion.") As a result, the trial judge's rejection of a plea agreement without a waiver of appeal does not constitute impermissible coercion.

Furthermore, the trial judge did not violate Petitioner's constitutional rights by denying his subsequent motion to withdraw the guilty plea. A trial judge in response to a defendant seeking to withdraw a guilty plea is not required to hold an evidentiary hearing, or to grant the withdrawal motion. See Hines v. Miller, 318 F.3d 157, 161 (2d Cir. 2003). The transcript of the guilty plea amply shows that at the time he offered his plea, Petitioner understood that the plea was unconditional and final. (March 16 Trial Tr., at 6-8.) Assuming, arguendo, that Petitioner's guilty plea was made under the misapprehension that he could withdraw his guilty plea, this does not raise a constitutional claim: "the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." United States v. Ruiz, 536 U.S. 622, 630 (2002) (citations omitted).

I therefore find that Petitioner's guilty plea, including the waiver of his right to appeal, was voluntary, knowing, and intelligent, and that the judge did not violate Petitioner's constitutional rights in denying his motion to withdraw the plea.

**C.     Forfeiture of Counsel During Sentencing Hearing**

Next, Petitioner asserts that his rights were violated when the trial judge at the sentencing hearing relieved his counsel and declared him to have waived his right to counsel, and then found him to have committed a prior felony based upon the evidence offered by the prosecution. As the state appellate court expressly ruled against Petitioner on these two claims, I shall review these grounds under the deferential standards set forth

11

in AEDPA.

"The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81 (2004) (citing Maine v. Moulton, 474 U.S. 159, 170 (1985); United States v. Wade, 388 U.S. 218, 224 (1967)). "The provision gives the accused the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including the pretrial stages, trial, and sentencing." Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). Furthermore, criminal defendants have a right to counsel notwithstanding their election to plead guilty. Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide to plead guilty than to an accused who stands trial."). I find that the June 7, 2001 and September 17, 2001 proceedings, in which the trial judge denied Petitioner's motion to withdraw his guilty plea, and conducted a sentencing hearing, were critical within the meaning of clearly established Supreme Court precedent. Petitioner therefore had the right to counsel at the June 7, 2001 and September 17, 2001 hearings.

Nevertheless, the Government maintains that the Petitioner forfeited his right to counsel by rejecting and refusing to cooperate with able and competent appointed counsel without good cause. The state appellate court cited the First Circuit case of Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976) for the proposition that "a criminal defendant may be asked to choose between waiver and another course of action as long as the choice presented is not constitutionally offensive." Allen, 4 A.D.3d at 479. The

12

appellate court further found that Petitioner waived his right to counsel "when he refused, without good cause, to cooperate with able appointed counsel." Id.

I first find that the state appellate court incorrectly characterized Petitioner as having *waived* his right to counsel. At no time did the Petitioner waive his right to counsel, defined by the Supreme Court as a voluntary, "knowing and intelligent relinquishment or abandonment of a known right or privilege . . . .'" Edwards v. Ariz., 451 U.S. 477, 482 (1981). Whenever the trial judge offered Petitioner the choice of self-representation or representation by counsel, Petitioner clearly chose to maintain counsel. Although the trial judge did put Petitioner on notice that he was not going to appoint additional counsel to Petitioner, at the moment that the judge granted Mr. Ruddy's motion to be relieved, Petitioner was not offered any alternative to Petitioner representing himself. Nor is it clear that Petitioner would have waived his right to counsel if provided the opportunity. Under these circumstances, and mindful of the Supreme Court's presumption against a waiver of the fundamental right to assistance of counsel, Johnson v. Zerbst, 304 U.S. 458, 465 (1938), Petitioner did not knowingly, voluntarily, and intelligently waive his right to counsel. See Fischetti v. Johnson, 384 F.3d 140 (3d Cir. 2004) (finding that defendant who remained silent when judge offered options to accept appointed counsel or represent himself does not knowingly and intelligently waive the right to counsel).

The appropriate analysis, which the state appellate court suggested when it held that Petitioner refused without good cause to cooperate with counsel, is whether Petitioner *forfeited* his right to counsel. See Leggett, 162 F.3d 237, 249 (3d Cir. 1998)

13

("Forfeiture . . . is often confused with the closely related - but distinct - concept of waiver.") "[T]he right to counsel, though fundamental, is not absolute. It is a qualified right. Just as it is true of other rights, the right to counsel may be restricted or lost due to the misconduct of the defendant." Gilchrist v. O'Keefe, 260 F.3d 87, 92 (2d Cir. 2001). While the Supreme Court has never considered a forfeiture of the right to counsel, the Court in Illinois v. Allen, 397 U.S. 337 (1970) and Taylor v. United States, 414 U.S. 17 (1973) held that a defendant can forfeit the right to be present at one's own trial due to misconduct. See Allen, 397 U.S. at 346 ("the accused [cannot] be permitted by his disruptive conduct indefinitely to avoid being tried on charges brought against him"); Taylor, 414 U.S. at 20. The Second Circuit, sitting in habeas, has interpreted Allen and Taylor to apply with equal force to a defendant's forfeiture of the right to counsel, Gilchrist, 260 F.3d at 97, and other circuit courts have found that defendants who unreasonably refuse to cooperate with and/or abuse counsel have forfeited the right to counsel. See, e.g., United States v. Thompson, 335 F.3d 782, 785 (8th Cir. 2003); United States v. Leggett, 162 F.3d 237, 250 (3d Cir. 1998); United States v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995). As the trial judge relieved counsel twice, on June 7, 2001, and on September 17, 2001, I shall analyze each forfeiture in turn.

I first find that the June 7, 2001 temporary withdrawal of Mr. Ruddy did not violate Petitioner's constitutional rights because the record amply demonstrates that the conflicts cited by Petitioner regarding his counsel were of his own making, and entailed serious, abusive conduct by Petitioner. The record reflects that on June 7, 2001 the trial judge relieved Mr. Ruddy and declared Petitioner to have forfeited his right to counsel

14

and to be proceeding pro se after Petitioner complained about and threatened to sue his two prior counsel, his allegation (found to be without merit) that prior counsel coerced his guilty plea, his initial refusal to appear at the June 7, 2001 hearing, and his third request for new counsel without cause. Petitioner's actions constitute serious misconduct, in that he engaged in a pattern of verbal abuse, threats, and unjustified refusals to cooperate with his three appointed attorneys. See Nix v. Whiteside, 475 U.S. 157, 176 (1986) (An "irreconcilable conflict" between Petitioner and counsel cannot amount to a Sixth Amendment violation if Petitioner created the conflict through his own unjustified refusal to cooperate with counsel.); McLeod, 53 F.3d at 325 (upholding a finding of forfeiture of counsel based upon the defendant's pattern of verbal abuse, repeated threats of lawsuits, and requests that his counsel engage in unethical conduct). That Petitioner was not warned at this juncture that his actions would forfeit his right to counsel presents no constitutional infirmity; where a defendant commits serious misconduct, no warning is required to forfeit of the right to counsel.[4] See Gilchrist, 260 F.3d at 97 ("even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct").

---

[4] I note for the record that in general, it is preferable for the trial judge to warn defendant of a potential forfeiture of a constitutional right, and to determine whether defendant's irrational actions are the result of incompetency before relieving counsel. While "it does not follow that because a person is mentally ill [that person] is not competent to stand trial," Newfield v. United States, 565 F.2d 203, 206 (2d Cir. 1977), it stands to reason that a defendant may be acting in an irrational manner due to a mental illness that does render the defendant incompetent. In this instance, as shall be explained infra, I find that the Petitioner was warned before his forfeiture resulted in prejudice, and that he established his competency at his guilty plea. However, forfeiting a defendant's right to counsel without warning and before ascertaining whether defendant's action is a result of mental incompetence, where there is a bona fide reason to believe that he is not competent, is not a practice that this court endorses.

Moreover, a review of the transcript shows that the trial judge cured any prejudice to Petitioner caused by relieving Mr. Ruddy at the June 7, 2001 proceeding by offering Petitioner the choice of continued representation minutes afterwards. The record reflects that the only action that occurred without counsel on June 7, 2001, is that Petitioner denied that he was a predicate felony offender. As Petitioner continues to deny this fact, and the trial judge reappointed counsel before the sentencing hearing, Petitioner suffered no prejudice in the momentary lapse of representation.

Next, the trial judge did not violate Petitioner's constitutional rights in relieving Mr. Ruddy during the sentencing hearing on September 17, 2001. Petitioner's curses and threats to sue counsel if he did not move to be relieved were an unreasonable refusal to cooperate with counsel. Petitioner's complaint that at the June 7, 2001 appearance Mr. Ruddy, "told me I was coming over here to cop out," provided Petitioner with no legitimate basis for new counsel, since this statement was true: Petitioner had already pled guilty to the charged offenses, and was in court for a sentencing hearing. See Boykin, 395 U.S. at 242 ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."). Counsel represented, and Petitioner did not seriously dispute, that Petitioner provided no legitimate justification for his threat on September 17, 2001 that he would sue counsel if he did not withdraw. Moreover, the trial judge placed Petitioner on notice that his continued misconduct would result in the forfeiture of the right to counsel. (June 7 Trial Tr., at 4-10); see Allen, 397 U.S. at 343 (defendant can lose the right to a constitutional right if put on notice that further

16

misconduct will result in forfeiture of the right). Lastly, to the extent that Petitioner's actions do not amount to the "extremely serious misconduct" found in other forfeiture rulings, see, e.g., United States v. Goldberg, 67 F.3d 1092, 1102 (3d Cir. 1995) (defendant threatened counsel's life), the trial judge in deeming Petitioner pro se *after* he pleaded guilty caused less prejudice to Petitioner than forfeiture rulings made before or during trial, and therefore requires a less serious showing of misconduct. See Gilchrist, 260 F.3d at 99 (quoting Leggett, 162 F.3d 237, 251 n.14 (finding that forfeiture of counsel at sentencing phase of proceeding requires a less serious showing of misconduct than at trial because the forfeiture "does not deal as serious a blow to a defendant")). Hence, the state appellate court's conclusion that Petitioner forfeited his right to counsel through his refusal to cooperate with his counsel is not an unreasonable application of Supreme Court precedent.

Petitioner's specific claim that the trial judge was required to inquire into Petitioner's competency to represent himself before relieving counsel is without merit. Forfeiture of counsel requires no predicate finding of competence beyond the defendant's general competence to stand trial. See Godinez v. Moran, 509 U.S. 389, 404 (1993) ("The Due Process Clause does not mandate different standards of competency at various stages of or for different decisions made during the criminal proceedings."); cf. Wilkerson v. Burge, 03-Civ.-3857, 2005 U.S. Dist. LEXIS 14679, at *12-*15 (S.D.N.Y. July 20, 2005) (The trial judge was not required to reevaluate competency of defendant in order to find him to have forfeited his right to counsel.). In all cases, defendant must have "a rational as well as factual understanding of the proceedings against him." Id. at

17

398 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). In this instance, the trial court conducted a prior inquiry and determined that Petitioner was competent to plead guilty, which encompasses a waiver of the constituent rights to trial and to appeal. A fortiori, Petitioner was competent to understand that his continued abuse of and refusal to communicate with counsel would result in the forfeiture of his right to counsel.

### D. Petitioner's Prior Conviction

Petitioner's third claim for relief, that the judge found that Petitioner was prior convicted of a felony "without the prior felony minutes," is similarly without merit. It is uncontested that after Petitioner denied that he had been convicted of a predicate felony, that the trial judge held a hearing, and found that fact beyond a reasonable doubt. See N.Y. Crim. Proc. Law § 400.21(5), (7) (requiring a hearing and that the government must show a predicate felony beyond a reasonable doubt). It is also undisputed that the government provided a certificate of conviction at the sentencing hearing with Petitioner's New York State Identification Number, which the state appellate court held was proof "beyond a reasonable doubt" that he was a second felony offender. Allen, 4 A.D.3d at 479-80. Petitioner does not offer evidence showing that he is not a prior felony offender, and does not suggest that the government was constitutionally required to produce the felony minutes. As Petitioner alleges no constitutional violation, and the state appellate court's finding is entitled to substantial deference under AEDPA, I decline Petitioner's invitation to consider the probative value of a certificate of conviction under New York State law. See, e.g., Nenni v. Costello, 02-CV-6116L, 2004 U.S. Dist. LEXIS

16976, at *64-65 (W.D.N.Y. Aug. 13, 2004) (petitioner's claim that at prior felony conviction hearing prosecutor failed to provide him with the minutes of the prior plea hearing transcript in violation of N.Y.C.P.L. § 400.21(7)(b) shows "no violation of a state statutory right, let alone a federal constitutional right").

### III.  CONCLUSION

The trial judge's refusal to take Petitioner's guilty plea without a waiver of appeal, his finding that Petitioner forfeited counsel without ascertaining his competency to represent himself pro se, and his determination that Petitioner was a predicate felony offender beyond a reasonable doubt, are not contrary to or an unreasonable application of clearly established constitutional rights as articulated in Supreme Court precedent. Allen's petition for a writ of habeas corpus is therefore denied. A certificate of appealability shall not issue. The Clerk of the Court is directed to close this case.

SO ORDERED.

Date: July 13, 2006  
      Brooklyn, New York

_____/s/_____  
Nicholas G. Garaufis  
United States District Judge